UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:14-cv-06264-CAS-SS | Date | January 12, 2015 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET LA LLC, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: | |
| Arnold Barba | Andrew Hunter<br>Richard Kolber<br>Thomas Lombardi | |

**Proceedings:**  FLSA DEFENDANTS' MOTION TO DISMISS, dkt. 14, MOTION TO STRIKE, dkt. 15, and REQUEST FOR JUDICIAL NOTICE, dkt. 16

JMCP AND TVW'S MOTION TO DISMISS, dkt. 17

TIVOLI'S MOTION TO DISMISS, dkt. 18, REQUEST FOR JUDICIAL NOTICE, dkt. 19, and REQUEST FOR JOINDER IN THE FLSA DEFENDANTS' REQUEST FOR JUDICIAL NOTICE AND MOTION TO STRIKE, dkt. 21

All motions and requests were filed on October 20, 2014.

## I.    INTRODUCTION

This action arises from the loss of funds deposited by plaintiff Jung Jae Lee to purchase 28 units on two floors of a condominium project located in Los Angeles, California. On August 8, 2014, plaintiff filed a complaint against the units' sellers and subsequent purchasers: defendants Federal Street L.A., LLC ("FSLA"), Federal Street Corporation ("FSC"), Michael C. Winter ("Winter"), Judi Fishman ("Fishman"), JMCP Corp. ("JMCP"), The View Wilshire ("TVW"), Tivoli Square Apartments, L.P. ("Tivoli"), and Does 1 through 50, inclusive. Dkt. 1 ("Cmplt."). She asserts claims for: (1) breach of contract; (2) fraud - intentional misrepresentation; (3) fraud - false promise; (4) actual fraudulent transfer; (5) constructive fraudulent transfer; (6) violation of Cal. Bus. & Prof. Code § 17200; and (7) rescission and restitution. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-06264-CAS-SS | Date | January 12, 2015 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET LA LLC, ET AL. | | |

On October 20, 2014, defendants FSLA, FSC, Winter, and Fishman (collectively, "FLSA defendants") filed a motion to dismiss the complaint, dkt. 14, a motion to strike, dkt. 15, and a request for judicial notice, dkt. 16. Further, defendants JMCP and TVW filed a motion to dismiss the complaint. Dkt. 17. Finally, defendant Tivoli filed a motion to dismiss the complaint or, in the alternative, for a more definite statement, dkt. 18, a request for judicial notice, dkt. 19, and a request for joinder in the FSLA defendants' motion to strike and request for judicial notice, dkt. 21. On December 8, 2014, plaintiff filed oppositions and objections to the motions and requests. Dkt. 27-34. On January 12, 2015, the Court held a hearing on this matter. For the reasons stated below, the Court denies the motions to dismiss, grants the request for joinder, and grants in part the motion to strike.

## II. FACTUAL BACKGROUND

Plaintiff alleges that she is a 77-year-old resident of Korea who reads, writes, speaks, and understands little to no English. Cmplt. ¶ 3. During the period commencing in the winter of 2008 and ending in the spring of 2009, plaintiff's agent, Eui Gwon Oh ("Oh"), negotiated an agreement for the purchase of 28 residential units ("Purchase and Sale Agreement" or "PSA") in The View Wilshire Tower ("Property") from FLSA with Winter and Fishman.[1] Id. ¶¶ 21-32.

Plaintiff avers that unbeknownst to her, FSLA failed to secure a loan to finance the construction of the Property. Id. ¶ 76. According to plaintiff, in several meetings with Oh held between December 2008 and May 2009, Winter and Fishman falsely stated that FSLA did have a loan in place, and that construction would be completed by October 1, 2009. Id. ¶¶ 37, 75, 76.

The parties signed the PSA on May 12, 2009. Id. ¶ 30. The PSA provided that escrow would close by October 1, 2009. Id. However, plaintiff alleges that the escrow remained open as of August 8, 2014. Id. ¶ 33. Plaintiff further alleges that between May and September 2009, plaintiff wire-transferred over $3,400,000 into the escrow account,

---

[1] Fishman is the president of JMCP, the managing member of TVW; Fishman and Winter hold controlling ownership interests in both JMCP and TVW. Id. ¶¶ 8, 9, 10. FSC is the managing member of FSLA, the seller of the Property. Id. ¶¶ 5, 12.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**       'O'

| Case No. | 2:14-cv-06264-CAS-SS | Date | January 12, 2015 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET LA LLC, ET AL. | | |

and that of that amount, $3,104,263 was released to FSLA in 2009, and $274,263 remains in escrow. Id. ¶¶ 34-35.

     Plaintiff alleges that on July 6, 2010, her counsel sent Winter a letter demanding the return of plaintiff's deposit. Id. ¶ 55. Plaintiff further alleges that Lucia Sung ("Sung"), a real estate agent acting on behalf of Winter and Fishman, falsely stated that plaintiff could not recover her deposit from FSLA because plaintiff would then be in breach of the PSA. Id. ¶ 56.

     Plaintiff avers that in a meeting with Oh, Fishman reiterated Sung's misrepresentation and falsely stated that if plaintiff agreed not to terminate the PSA until December 31, 2011, FSLA would complete construction and close escrow by that date. Id. ¶ 57. Plaintiff alleges that in reliance on these representations, Oh signed an amendment to the PSA on August 10, 2010, which stated that plaintiff would not exercise her right of termination until December 31, 2011. Id. ¶ 58.

     Plaintiff alleges that on May 31, 2011, Fishman, in a secret transaction, purported to sell the Property to Tivoli and TVW for $36,000,000, a price far below its fair market value, id. ¶¶ 59-60, but in truth of fact, FLSA did not assign the PSA to Tivoli and TVW, id. ¶ 61. Thereafter, plaintiff avers that in a second undisclosed transaction on July 29, 2013, Tivoli and TVW in turn sold the Property to 3460 West Seventh (CA), LLC ("3460 West") for $63,000,000. Id. ¶ 64.

## III. LEGAL STANDARD

     A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under Rule 12(b)(6), a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-06264-CAS-SS | Date | January 12, 2015 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET LA LLC, ET AL. | | |

929 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). However, "[i]n keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief.") (citing Twombly and Iqbal); Sprewell, 266 F.3d at 988; W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Secs. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 118 S. Ct. 956, 140 L. Ed. 2d 62 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

**IV.  REQUESTS FOR JUDICIAL NOTICE**

The FLSA defendants, joined by Tivoli, request that the Court take judicial notice of the facts that: (1) Lehman Brothers Holdings, Inc. filed for Chapter 11 bankruptcy on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-06264-CAS-SS | Date | January 12, 2015 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET LA LLC, ET AL. | | |

September 15, 2008; and (2) the Illinois Department of Financial and Professional Regulation closed Broadway Bank, FLSA's major lender, on April 23, 2010, and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. Dkt. 16 at 2. They also request that the Court judicially notice nine documents from Fed. St. L.A., LLC v. Fed. Deposit Ins. Corp., United States District Court, Northern District of Illinois, Case No. 1:10-cv-063492. Id. Further, Tivoli requests that the Court take judicial notice of plaintiff's state-court complaint against defendants from Lee v. Fed. Street LA, LLC, et al., Los Angeles Superior Court, Case No. BC530913, an action she dismissed with demurrers pending before she filed this action. Dkt. 19 at 2. It also requests judicial notice of nine building permits issued after Tivoli and TVW purchased the Property. Id.

     The Court takes judicial notice of the documents from Fed. St. L.A., LLC v. Fed. Deposit Ins. Corp., the complaint from Lee v. Fed. Street LA, LLC, et al., and the building permits issued after Tivoli's purchase because they are matters of public record, but does not accept them for the truth of the matters asserted therein. See Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001). The Court does not take notice of the factual statements regarding Lehman Brothers and Broadway Bank because they are not adjudicative facts concerning the immediate parties consistent with Fed. R. Evid. 201(a), see Doty v. State Farm Fire & Cas., 985 F.2d 572 (9th Cir. 1993), and because the source material is not specified pursuant to Fed. R. Evid. Code 201(b)(2). See In re Tyrone F. Conner Corp., Inc., 140 B.R. 771, 781 (Bankr. E.D. Cal. 1992); Peel v. BrooksAmerica Mortgage Corp., 788 F. Supp. 2d 1149, 1157 (C.D. Cal. 2011).

## V.   MOTIONS TO DISMISS

###    A.   Whether the Fraud Claims are Time-Barred

     The FSLA defendants argue that the fraud claims are time-barred. According to defendants, plaintiff had inquiry notice of the fraud as early as October 2, 2009, when she was confronted with the fact that the construction was not completed by the October 1, 2009 deadline. Dkt. 14 at 10. They assert that plaintiff also received inquiry notice: (1) by April 12, 2010, when FSLA asked plaintiff for $2 million in interim financing to recommence construction because Broadway Bank could not make the advance; (2) by April 23, 2010, when it became known that the Illinois Department of Financial and Professional Regulation had closed Broadway Bank and appointed the FDIC as receiver; (3) by July 2010, when plaintiff's counsel drafted a letter to FSLA demanding the return

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**  'O'

| Case No. | 2:14-cv-06264-CAS-SS | Date | January 12, 2015 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET LA LLC, ET AL. | | |

of plaintiff's deposit; and (4) by October 4, 2010, when FSLA filed a complaint against the FDIC and alleged that construction financing with Broadway Bank did not take place. Id. at 12-14. Alternatively, the FSLA defendants assert that plaintiff had constructive notice: (1) by April of 2010, when it became known that FSLA had failed to comply with the regulatory requirements for the condominium conversion; and (2) by May 31, 2011, when two grant deeds were recorded to show that FSLA had sold the Property. Id. at 15-16.

The FSLA defendants' arguments lack merit. As noted by plaintiff, the claims for fraud did not accrue until January 1, 2012, when the units were not delivered in accordance with the amendment to the PSA, and plaintiff lost her $3.1 million investment in the Property. See Downer v. Bramet, 152 Cal. App. 3d 837, 844 (1984) ("The existence of actual damages is an essential element of a cause of action for damages for fraud"); Garver v. Brace, 47 Cal. App. 4th 995, 999-1000 (1996) ("[A] cause of action does not accrue, and the statutory period does not commence to run, until the plaintiff sustains actual and appreciable harm."). Second, the causes of action for fraud are not premised on the promise that construction would be completed by October 1, 2009, but rather on the misrepresentations that defendants had construction financing in place at the time plaintiff entered into the PSA, and later, when the PSA was amended, that escrow on the Property would close by December 31, 2011. See Cmplt. ¶ 37, 57, 58, 75, 76. Third, plaintiff (an elderly, non-English-speaking Korean resident) affirmatively alleges that she did not have knowledge of many of the above-listed matters at the time of the alleged fraudulent statements. Dkt. 33 at 3-10. A motion to dismiss is an improper vehicle for resolving the factual conflict regarding whether plaintiff was aware of those matters. Thus, the claims for fraud are not time-barred.

### B. Whether the Exclusive Remedy Provision is Enforceable

All defendants urge dismissal in reliance on an exclusive remedy provision in the PSA, which states that:

> If the Closing fails to occur due to [FSLA's] default hereunder, which default is not cured within thirty (30) days, [plaintiff's] sole and exclusive remedy shall be to terminate this Agreement and receive a refund of (1) the entire Deposit, plus (2) the Interest Factor. [FSLA] shall not be liable to [plaintiff] for any other remedies, including any claims for any other

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-06264-CAS-SS | Date | January 12, 2015 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET LA LLC, ET AL. | | |

> damages, including, without limitation, additional compensatory damages, special damages, consequential damages (including, without limitation, damages for lost profits, delay, changes in market conditions, *etc.*) or punitive damages, based upon any breach or default under this Agreement or any other act, error or omission by [FSLA]. [Plaintiff] shall not seek nor have the right to seek satisfaction for any obligation from any partners, members, managers, shareholders, officers, directors, employees, agents, legal representatives, successors or assigns of [FSLA], nor shall any of the foregoing have any personal liability for any such obligations of [FSLA]. [Plaintiff] expressly waives any right to make any claim for specific performance of [FSLA's] obligations hereunder and waives any right to file or record a lis pendens against the Sale Units or the [Property].

Dkt. 14 at 4-5; dkt. 17 at 5; dkt. 18 at 8 (all citing cmplt., Ex. A ("PSA") ¶ 11(a)).

     However, "when the agreement itself is procured by fraud, none of its provisions have any legal or binding effect." Vai v. Bank of Am. Nat'l Trust & Sav. Ass'n, 56 Cal. 2d 329, 344 (1961). "[F]raud which was the inducing cause of the execution of the contract renders the whole instrument vulnerable — the [waiver] clause in question as well as all the other provisions." Palladine v. Imperial Valley Farm Lands Ass'n, 65 Cal. App. 727, 747 (1924). Thus, "'[i]t is well established that a party to an agreement induced by fraudulent misrepresentations or nondisclosures is entitled to rescind, notwithstanding the existence of purported exculpatory provisions contained in the agreement." Ron Greenspan Volkswagen, Inc. v. Ford Motor Land Dev. Corp., 32 Cal. App. 4th 985, 994-95 (1995) (quoting Danzig v. Jack Grynberg & Assocs., 161 Cal. App. 3d 1128 (1984)). Plaintiff asserts that Winter and Fishman induced her to sign the PSA by falsely stating that FSLA had a loan for the construction on the Property. Id. ¶¶ 37, 75, 76. The Court must accept the truth of her allegations at this stage in the proceedings.[2] Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). Because the entire

---

[2] Tivoli argues that plaintiff's complaints in federal and state court are "difficult to reconcile and put[] into doubt the genuineness of the allegations" because, "[b]esides claiming the [PSA] was 'fair, just and reasonable', [plaintiff]'s state court complaint was devoid of any claims for fraud or rescission." Dkt. 18 at 9 n.4. It also disputes the allegation that the Property was sold far under market value by using the building permits

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | **'O'** |
|---|---|---|---|
| Case No. | 2:14-cv-06264-CAS-SS | Date | January 12, 2015 |
| Title | JUNG JAE LEE v. FEDERAL STREET LA LLC, ET AL. | | |

PSA is voidable on grounds of fraud, defendants are not entitled to rely on an exclusive remedy provision in the PSA to obtain a Rule 12(b)(6) dismissal.

## VI.     MOTION FOR A MORE DEFINITE STATEMENT

As an alternative to its motion to dismiss, Tivoli requests a more definite statement of facts showing that it bought the Property to hinder, delay, or defraud plaintiff at less than fair market value. Dkt. 18 at 16-17. Under the California Uniform Fraudulent Transfer Act, a transfer is fraudulent if a debtor: (1) makes the transfer with the actual intent to hinder, delay, or defraud a creditor; or (2) in certain cases, without getting reasonably equivalent value therefor. Cal. Civ. Code § 3439.04(a)(1) & (2). Here, plaintiff claims, on information and belief, that Tivoli is not merely a third-party purchaser; instead, she contends that when FSLA bought the Property from Wilshire Tower Apartments, LLC ("Wilshire") on July 2, 2008 for $33,600,000, Tivoli was Wilshire's managing member. Cpt. ¶¶ 12, 15. Further, she asserts, on information and belief: that defendants made the decision to transfer the Property from FSLA to Tivoli with the knowledge and intent that the transfer would hinder, delay, and defraud her and despite the fact that the transfer could be avoided, Cpt. ¶¶ 96, 97, 98; that Tivoli paid a price far below the fair market value of the Property, Cpt. ¶ 60; and that Tivoli and TVW transferred their respective interests in the Property for $63,000,000, a $27,000,000 increase in the sales price over a 26-month period, Cpt. ¶ 64.

These allegations are sufficient to withstand a motion for a more definite statement. Rather than simply stating the elements of fraudulent transfer, plaintiff provides the grounds for her suspicions by asserting the existence of a connection between Wilshire and Tivoli and highlighting the marked increase in the price paid by Tivoli as compared to that paid by a third party. While Tivoli is free to contradict plaintiff's inferences, it must permit her a chance to assemble evidence supporting her allegations by saving its factual arguments for a motion for summary judgment. Indeed, without the benefit of discovery, it is unreasonable to expect plaintiff to "identify by name, title, capacity or position the person who allegedly made the stated representations" and state the person's

---

to show its "massive investment ... in the construction of the building into luxury apartments." Id. at 14 n.5. Those challenges to the truthfulness of the complaint are not appropriate for resolution on a motion to dismiss.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-06264-CAS-SS | Date | January 12, 2015 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET LA LLC, ET AL. | | |

"authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Rader v. Apple Valley Bldg. & Dev. Co.*, 261 Cal. App. 2d 308, 314 (1968). Tivoli is not entitled to a more definite statement at this stage.

## VII. MOTION TO STRIKE

The FLSA defendants, joined by Tivoli, move to strike five allegations from the complaint: (1) "As a result of Defendants' unlawful, unfair and fraudulent business practices, Plaintiff has suffered damages in the amount to be proven at trial, but which are in excess of $3,104,263," cmplt. ¶ 111; (2) "... and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such unlawful business acts and practices," id., Prayer; (3) "Plaintiff is informed and believes, and based thereon alleges that because the blanket encumbrance against the Property ... FSLA failed to secure a Subdivision Report during the time that its Conditional Public Report was in effect, or ever," id. ¶¶ 51-54; (4) "... and violating the requirements contained in California Business & Professions Code §§ 11000 through 11023," id. ¶ 109; and (5) "As a result of FSLA's failure to comply with the above-referenced requirements of the California Business & Professions Code, and those contained in the Conditional Public Report, FSLA's purported sale of the Units to Plaintiff was unlawful," id. ¶ 113.

With regard to the first two portions of the complaint, California Business and Professions Code § 17203 ("Unfair Competition Law" or "UCL") limits plaintiff's relief for unlawful business practices to an injunction or restitution, and does not allow an award of compensatory damages, punitive damages, or disgorgement. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1184 (2003); *Bank of the West v. Sup. Ct. (Indus. Indem. Co.)*, 2 Cal. 4th 1254, 1266 (1992); *Chern v. Bank of Am.*, 15 Cal. 3d 866, 875 (1976); *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1482 & n.21 (2014). Accordingly, the Court strikes claims for "damages" and "disgorgement" from the cause of action for violations of the UCL.

With respect to the last three portions of the complaint, California Business and Professions Code § 11010.35(a) ("Subdivided Lands Act" or "SLA") does not apply to a proposed sale of five or more units where, as here, the purchase agreement includes a statement that the purchaser is required to comply with the SLA prior to offering the units acquired for sale or lease. See PSA ¶ 9(c). However, the bulk sale exemption "does not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES - GENERAL** | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-06264-CAS-SS | Date | January 12, 2015 |
| Title | JUNG JAE LEE v. FEDERAL STREET LA LLC, ET AL. | | |

apply to a proposed sale ... that is done for the purpose of evading any other provision of [the SLA]." Cal. Bus. & Prof. Code § 11010.35(b). Ascertaining the purpose of the parties in including certain provisions in the PSA is a task best left for summary judgment or trial. As a result, the Court denies the remainder of the motion to strike.

## VIII. CONCLUSION

For the reasons explained above, the Court DENIES the motions to dismiss, dkt. 14, dkt. 17, dkt. 18; DENIES the motion for a more definite statement, dkt. 18; GRANTS the request for joinder, dkt. 21; and GRANTS IN PART the motion to strike, dkt. 15. The following two portions of the complaint are STRICKEN: (1) "As a result of Defendants' unlawful, unfair and fraudulent business practices, Plaintiff has suffered damages in the amount to be proven at trial, but which are in excess of $3,104,263," cmplt. ¶ 111; and (2) "... and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such unlawful business acts and practices," id., Prayer. The remainder of the motion to strike is DENIED.

IT IS SO ORDERED.

| | 00 | : | 25 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |