UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Not Present | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| Not Present | Not Present | |

**Proceedings:**     (IN CHAMBERS) - DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 76, filed January 22, 2016)

## I.    INTRODUCTION

On July 17, 2015, plaintiff filed the operative First Amended Complaint in this action against defendants Federal Street L.A., LLC ("FSLA"); Federal Street Corporation ("FSC"); Michael C. Winter ("Winter"); Judi Fishman ("Fishman"); JMCP Corp.; The View Wilshire; Tivoli Square Apartments, L.P.; Tivoli Capital, Inc.; Milan Properties, LLC; JMCP, LCC; JMCP Manager, LLC; and Does 1 through 50 (collectively, "defendants"). Dkt. 58. In the FAC, plaintiff asserts claims for: (1) breach of contract; (2) fraud—intentional misrepresentation; (3) fraud—false promise; (4) actual fraudulent transfer; (5) constructive fraudulent transfer; (6) constructive fraudulent transfer—insolvency; (7) violation of Cal. Bus. & Prof. Code § 17200 ("the UCL"); and (8) rescission and restitution. Id.

On January 22, 2016, defendants FSLA, FSC, Winter, Fishman, JMCP Corp., The View Wilshire, JMCP, LCC, and JMCP Manager, LLC (collectively, "the moving defendants") filed a motion for partial summary judgment. Dkt. 76. On February 8, 2016, plaintiff filed an opposition, Dkt. 89, and on February 22, 2016, defendants filed a reply, Dkt. 92. On March 7, 2016, the Court held a hearing on the moving defendants motion for partial summary judgment. Dkt. 95. At the hearing, counsel for plaintiff requested the opportunity to file a supplemental brief responding to arguments raised by the moving defendants in their reply brief. The Court granted this request. Accordingly, on March 21, 2016, plaintiff filed a supplemental brief, Dkt. 96, and on March 24, 2016,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL  'O'

| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

the moving defendants filed a response, Dkt. 97.  Having carefully considered the parties' arguments, the Court finds and concludes as follows.[1]

## II. BACKGROUND

In July 2008, defendant FSLA purchased an apartment building in Los Angeles known as The View Wilshire Tower ("the Property").  Dkt. 79, Fishman Decl. ¶¶ 4-5.  To finance this purchase, FSLA obtained two loans, the first in the amount of $26,880,000 and the second in the amount of $3,000,000, from Broadway Bank in Chicago, Illinois.  Id. ¶ 5.

On or about May 12, 2009, plaintiff and FSLA entered into a Purchase and Sale Agreement and Joint Escrow Instructions (the "PSA") for the purchase and sale of twenty-eight condominium units on the fifth and sixth floors of The View Wilshire Tower.  Defendants' Statement of Undisputed Facts ("DSUF") ¶ 1; Plaintiff's Statement of Undisputed Facts ("PSUF") ¶ 1.  The PSA was executed by Eui Gwon Oh ("Oh"), plaintiff's attorney-in-fact and authorized agent and representative in California.  DSUF ¶

---

[1] On March 29, 2016, defendants Tivoli Square Apartments, L.P., Tivoli Capital, Inc., and Milan Properties, LLC (collectively, "Tivoli defendants"), filed a notice of joinder in the moving defendants' motion for partial summary judgment.  Dkt. 98.  Plaintiff objects to the Tivoli defendants' joinder in the instant motion.  Dkt. 99.  The Court finds that the Tivoli defendants joinder is both untimely and procedurally improper.  First, the moving defendants filed their motion for partial summary judgment over two months prior to the Tivoli defendants' notice of joinder.  In the interim, the parties fully briefed the issues raised in the moving defendants' motion, the Court held a hearing, and the parties' filed supplemental briefing.  Allowing the Tivoli defendants' to join in the moving defendants' motion at this late stage would be unfair to plaintiff and would provide her with inadequate notice.  Second, while the Tivoli defendants insinuate that the Court's ruling on the moving defendants' motion is equally applicable to them, there may be certain arguments or facts which are uniquely applicable to the Tivoli defendants.  At present, the parties have submitted statements of undisputed facts and briefing addressed principally to plaintiff's claims against the moving defendants, not the Tivoli defendants.  As such, given the limitations of the record, the Court finds that it would be improper to extend the Court's ruling to the Tivoli defendants.  Accordingly, the Court rejects the Tivoli defendants' joinder in the instant motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL  'O'

| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

2; PSUF ¶ 2. Plaintiff was also represented in this transaction by Shannon Yang ("Yang"), a licensed California real estate agent. DSUF ¶ 3; PSUF ¶ 3.

The total purchase price of the condominium units was roughly $7.9 million, of which plaintiff made an initial deposit of just over $3 million. Plaintiff's Opposition, at 3. As part of the negotiations regarding the PSA, plaintiff, through her agents, and FSLA agreed that in exchange for a discount off the list price of the condominiums plaintiff would release her deposit to FSLA for construction and development costs associated with the condominiums. Dkt. 77-2, Hunter Decl. Ex. 23, Oh. Depo. Pg. 148:25-149:12. The PSA provided, in part, that escrow on the condominium units would close no later than October 1, 2009 and that, if escrow did not close by that date, plaintiff would have the right to terminate the PSA and receive a refund of her initial deposit (plus an amount equal to 4% annual interest on her deposit). DSUF ¶ 4; PSUF ¶ 4. Both Oh and Yang knew and understood that if escrow did not close on the condominium units by October 1, 2009, plaintiff was entitled to terminate the PSA. DSUF ¶ 5; PSUF ¶ 5.

On June 8, 2009, Yang received an email from defendant Fishman, one of the principals at FSLA. DSUF ¶ 66; PSUF ¶ 66.[2] This email included an attached construction schedule which indicated that construction on the condominium units would be completed by October 1, 2009. DSUF ¶¶ 66-67; PSUF ¶¶ 66-67. Shortly thereafter, FSLA's bank, Broadway Bank, began experiencing financial difficulties which affected FSLA's ability to obtain financing for the condominium project and caused delays in the development of the condominiums.

In September 2009, defendant Winter, another principal at FSLA, informed Yang that FSLA was not going to be able to deliver plaintiff's condominium units by October 1, 2009. DSUF ¶ 68; PSUF ¶ 68. Instead Winter informed Yang that construction on the condominium units would be completed by November, 2009. DSUF ¶ 69; PSUF ¶ 69. Nevertheless, FSLA did not deliver the condominiums in November 2009. DSUF ¶ 72; PSUF ¶ 62. On January 18, 2010, Yang sent an email to Fishman inquiring about the

---

[2] Both plaintiff and the moving defendants have objected that a number of purportedly uncontroverted facts are disputed on the grounds that they are either "irrelevant" or "immaterial." However, these facts are, by and large, not substantively disputed and to the extent the Court has found any of these facts relevant in ruling on the moving defendants' motion the parties' objections are OVERRULED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL     'O'

| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

status of construction on the condominiums. DSUF ¶ 73; PSUF ¶ 73. Fishman responded that "construction is moving along." DSUF ¶ 74; PSUF ¶ 74. According to Yang, in or around late February or early March 2010, Winter told Yang that construction of the condominiums would be finished by June 2010, "no matter what." Yang Decl. ¶ 17.³

On or about April 14, 2010, FSLA emailed a letter to Oh and Yang. DSUF ¶ 15; PSUF ¶ 15. The letter provided, in relevant, part:

> As you are aware, construction progress on the Project recently slowed down as a result of the significant challenges confronting our Bank, Broadway Bank (the "Bank"). The FDIC has prohibited the Bank from making further advances on loans in excess of the Bank's new reduced lending limits. As a result, we have been forced to find other construction financing sources to complete the construction.

Id.⁴ In this letter, FSLA also stated: "It is important to note that the funding problems that we are experiencing have *nothing* to do with the viability of the Project." Yang Decl. Ex. 6 (emphasis in original).⁵ On April 23, 2010, the Illinois Department of Financial

---

³ The moving defendants object that the portion of Yang's declaration in which she states that Winter conveyed that construction of the condominiums would be completed by June, 2010 violates the sham affidavit rule. The "sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony.' " Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (citations omitted). However, defendants identify no prior statement of Yang's which is inconsistent with this portion of her declaration. And Yang has submitted an email dated March 22, 2010 in which she recounted Winter's statement that construction would be completed by June 2010 "no matter what." Yang Decl., Ex. 5. Accordingly, the Court does not find that Yang's declaration is a "sham" affidavit. The moving defendants' objection is, therefore, OVERRULED.

⁴ Plaintiff states that several fact are "disputed" because they improperly include multiple purported facts in the same entry. However, plaintiff does not substantively dispute these facts. Accordingly, these objections are OVERRULED.

⁵ The moving defendants' object that this letter constitutes inadmissible hearsay. However, as a letter from FSLA, this letter falls within the hearsay exclusion for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

and Professional Regulation—Division of Banking closed Broadway Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver for Broadway Bank. DSUF ¶ 16; PSUF ¶ 16.

In May 2010, Winter received a phone call from Sudeok Jang ("Jang"), an attorney representing plaintiff. DSUF ¶ 17; PSUF ¶ 17. FSLA confirmed with Oh that it could provide Jang with whatever information he requested. Id. In subsequent letters Yang informed FSLA that Jang had been retained by plaintiff for the purpose of terminating the PSA. Dkt. 77-2, Hunter Decl., Ex. 58.

On or about June 14, 2010, FSLA sent letters to Jang and Oh which provided, in pertinent part: "on April 23, 2010, the [FDIC] closed Broadway Bank. Further delays were created since we now need to work with the FDIC to arrive at an amicable solution for moving forward. The FDIC has a process that they must follow and it does take some time . . . but the FDIC must approve the structure to release the Broadway Bank loan before we can close on the alternative funding sources." DSUF ¶¶ 18, 19; PSUF ¶¶ 18, 19. On July 6, 2010, Jang sent an email to FSLA, appearing to copy plaintiff as a recipient. DSUF ¶ 20; PSUF ¶ 20. The email stated, in pertinent part: "[w]e have reviewed your letter dated June 14, 2010 and related documents with out client. We appreciate your candor and diligence in reporting the difficult process of closing work. Our client has waited, however, [an] extraordinarily longer time than can be justified by reasons that you have explained to us. The escrow was to close by October 1, 2009. While you are currently hav[ing] a financing problem, it is not sufficient to excuse you from non-performance over more than a year since the date of the Purchase Agreement." Id.

In addition, on July 30, 2010, Yang sent an email to Fishman in which she stated that Jang wished to terminate the PSA. Dkt. 77-2, Hunter Decl., Ex. 58. Nonetheless, Yang stated that she and Oh hoped to "find a solution to the situation" and, thereby, avoid a termination of the PSA. Id. On August 3, 2010, Fishman sent an email to Yang providing a "general update" regarding FSLA's progress in obtaining financing for their construction project. Specifically, Fishman stated: "we have an agreement with the local FDIC representatives and they will be seeking final board approval. Assuming Board

---

statements by an opposing party. See Fed. R. Evid. 801(d)(2). And, in any event, it is offered for its effect on the recipient and not the truth of the matter asserted. See DSUF ¶ 15. Accordingly, the moving defendants' objection is OVERRULED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

 | CIVIL MINUTES - GENERAL | 'O' |
|---|---|---|
| Case No. | 2:14-cv-06264-CAS(SSx) | Date  May 3, 2016 |
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | |

approval, which we have no reason to believe will be withheld, we are expecting to resume the construction on the project in full force by this fall. This is wonderful news and we are very excited about moving forward." Yang Decl., Ex. 9.

Yang states that she spoke to Fishman shortly after receiving her email on August 3, 2010. Yang Decl. ¶ 23. According to Yang, Fishman told her that FSLA needed some additional time to finish construction on plaintiff's condominiums. In addition, Yang claims that Fishman promised that if plaintiff would agree to hold off on cancelling the PSA, FSLA would deliver plaintiff's condominiums to her on or before December 31, 2011. Id. Fishman denies having made this promise. Fishman Decl., ¶ 22. On or about August 10, 2010, Oh, on plaintiff's behalf, and FSLA entered into a Second Addendum to the PSA. Hunter Decl., Ex. 58. Pursuant to the Second Addendum, plaintiff agreed not to terminate the PSA until, at the earliest, December 31, 2011. Id.

Notwithstanding the Second Addendum, or any promises purportedly made by Fishman, FSLA did not deliver plaintiff's condominiums to her by December 31, 2011. To date defendants have not delivered plaintiff's condominiums. On August 8, 2014, plaintiff initiated this action against defendants asserting claims for, among others, breach of contract and promissory fraud.

## III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

IV. ANALYSIS

　　A.　Plaintiff's Third Claim for Promissory Fraud

Plaintiff asserts a claim in this action for promissory fraud. False promise or promissory fraud is a "subspecies" of fraud and "will only lie when one makes a promise of future conduct with no intention, at the time of the promise, of actually performing that promise." Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co., 118 F. Supp. 2d 1002, 1013 (C.D. Cal. 2000) (citing Tarmann v. State Farm Mutual Auto Ins. Co., 2 Cal. App. 4th 153, 159 (1991)); see also Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud.").

Here, plaintiff's claim is premised on a promise by defendant Fishman that, in exchange for plaintiff's commitment not to cancel the PSA, FSLA would complete construction and deliver plaintiff's condominium units to her by December 31, 2011. The moving defendants contend that the Court should grant summary judgment in their favor as to plaintiff's promissory fraud claim on the grounds that (1) plaintiff's claim is barred by the applicable statute of limitations and (2) plaintiff's claim violates the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

economic loss rule. The Court addresses each of these arguments in turn.[6]

      **1.**     **Statute of Limitations**

"Generally speaking, a cause of action accrues at 'the time when the cause of action is complete with all of its elements.' " Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 806 (quoting Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1999)). But "[a]n important exception to the general rule of accrual is the 'discovery rule,' which postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Id. at 807. "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." Id. In this context, "elements" refers not to the specific legal elements of the particular cause of action at bar, but rather to the " 'generic' elements of wrongdoing, causation, and harm." Id. (quoting Norgart, 21 Cal. 4th at 397). Therefore, to determine when the statute of limitations period began to run, courts look to "whether the plaintiffs have reason to at least suspect that a type of wrongdoing has injured them." Id.

As stated above, plaintiff has asserted a claim for promissory fraud against the moving defendants. In California, the statute of limitations for commencing an action sounding in fraud is three years. Cal Civ. Code § 338(d); see also Doe v. Roman Catholic Bishop of Sacramento, 189 Cal. App. 4th 1423, 1430 (Cal. Ct. App. 2010) ("The limitations period for a fraud cause of action is three years from accrual."). Plaintiff argues that her promissory fraud claim did not accrue until, at the earliest, January 1, 2012—after the moving defendants failed to keep their promise to deliver plaintiff's condominium units to her by December 31, 2011. For the following reasons, the Court agrees.

---

[6] The moving defendants also dispute that defendant Fishman, in fact, promised plaintiff that FSLA would deliver her condominium units by December 31, 2011. However, there is evidence in the record to support that Fishman made this promise—among other things, the Second Addendum which, according to plaintiff, memorializes Fishman's promise. And, in any event, this argument simply demonstrates that a genuine issue of material fact exists as to whether Fishman made a promise to plaintiff.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL     'O'

| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

The theory of plaintiff's claim is that the moving defendants made her a promise that they had no intention of honoring. As such, plaintiff's claim did not accrue until she had reason to suspect that the moving defendants had made her a false promise. The Court finds that, in this case, the earliest plaintiff may have suspected that the moving defendants had made a false promise was when they actually breached their promise to her.[7] Accordingly, because the moving defendants purportedly breached their promise on January 1, 2012 and plaintiff initiated this action on August 8, 2014—within three-years of that date—plaintiff's claim is not time barred.

The moving defendants resist this conclusion and argue that evidence in the record demonstrates that plaintiff was on inquiry notice of her clam well before January 1, 2012. First, the moving defendants note that on October 20, 2010, FSLA filed a complaint against the FDIC. The moving defendants contend that the contents of this complaint indicated that FSLA had not obtained the required financing to complete construction of plaintiff's condominium units and that construction on the condominium units had halted. Moreover, the moving defendants argue that this complaint was a matter of public record and that, in any event, one of plaintiff's agents has admitted to learning of this complaint through an online article. According to the moving defendants, the existence of this complaint, and the information contained within it, should have put plaintiff on inquiry notice that their promise to deliver the condominium units by December 31, 2011 was not true.

This argument misses the mark. Knowledge of FSLA's complaint against the FDIC may have put plaintiff on notice that the Project was in trouble and that the moving defendants might ultimately be unable to deliver her condominium units. However, plaintiff's claim is that *at the time they made their promise to her* the moving defendants had no intention of delivering her condominium units. The fact that plaintiff may have had cause to doubt that the moving defendants would ultimately be able to deliver her condominium units does not also mean that she had cause to believe that the moving defendants had made her a false promise. As such, plaintiff's knowledge that FSLA had

---

[7] In fact, there is evidence to suggest that plaintiff did not have reason to suspect the moving defendant's alleged fraud until even after they breached their promise. For example, plaintiff contends that a meeting was held at the Property on March 22, 2012 during which the parties discussed defendants' progress in constructing the condominium units and their expected delivery date. PSUF ¶¶ 130-31.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

filed a complaint against the FDIC was not sufficient to put her on inquiry notice of her promissory fraud claim.

Next, the moving defendants argue that plaintiff had knowledge from as early as May 31, 2011 that FSLA had sold and transferred the Property to the Tivoli defendants. The moving defendants state that, as of this sale, "any interest or ability of FSLA to close [e]scrow and transfer tile of the Units to Plaintiff by December 31, 2011 ceased." Mot., at 19. However, even assuming that this is true, in meetings following the sale the moving defendants represented to plaintiff that the sale and transfer of the property would not affect her condominium units. For example, plaintiff contends that during a meeting on March 22, 2012, Yang asked defendant Winter about the ownership of the Property. Winter responded: "It's the same company. I'm still a CEO. The FDIC requested that we open up a new corporation in order to release the money . . . Don't worry about it." Yang Decl. ¶ 27.[8] Under these circumstances, a reasonable jury could find that plaintiff was not on inquiry notice of her promissory fraud claim simply because the moving defendants had transferred ownership of the Property to another entity.

Finally, the moving defendants place great emphasis on an email they received on October 20, 2010 from plaintiff's attorney, Jang. In this email, which was purportedly sent in response to plaintiff's learning of the FDIC complaint, Jang stated:

> Since we requested on May 20, 2010 performance of your obligations, you have not presented us any realistic solutions but advanced only irrelevant excuses. You have also demonstrated bad faith and prejudice in discussing with us for a possible negotiation. Under the circumstances, we have no choice but to conclude that you have

---

[8] The moving defendants' object to this portion of Yang's declaration on the grounds that it violates the sham affidavit rule. As stated above, *supra* n.3, the "sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony.'" Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) (citations omitted). However, the Court relies on this portion of Yang's declaration solely for her description of Winter's statements on March 22, 2012. The moving defendants have identified no prior statements by Yang which contradict her representation that the parties held a meeting at the property on March 22, 2012 and that, at this meeting, Winter made the statements quoted above. Accordingly, this objection is OVERRULED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

> materially breached the Agreement by lack of performance and you have no intent and ability to cure the default.

Winter Decl., Ex. 78, Jang Letter October 20, 2010. Jang also stated that he was demanding the return of plaintiff's deposit and threatened legal action against the moving defendants. The moving defendants contend that Jang's email is evidence that plaintiff suspected that the moving defendants had acted in bad faith and made her a false promise. However, while this may be a plausible interpretation of Jang's statements, the email could also be read as a sign of plaintiff and her attorneys' growing frustration with the moving defendants' delay in delivering her condominium units. Moreover, in response to Jang's statements, defendant Winter sent Jang an email on October 30, 2010 attempting to assuage his concerns. Among other things, Winter stated: "We do not invite litigation and believe that, with the proper documentation, we can discuss any issue [plaintiff] has, and resolve it amicably." Kim Decl, Ex. 3.[9] He also added: "You seem to be manufacturing an issue which does not in reality exist." Id. Jang was apparently

---

[9] The moving defendants object to Exhibit 3 to the declaration of Christopher Kim ("Kim") on the grounds that it has not been properly authenticated. However, in his declaration, Kim identifies this exhibit as "a true and correct copy of a letter from Michael Winter to Sudeok Jang, dated October 30, 2010" and states that it was produced in discovery by defendant FSLA. Kim Decl. ¶ 4. Documents that are produced in response to discovery requests and that contain certain indicia of reliability may be deemed authentic when later offered by a party-opponent. See Orr v. Bank of Am., NT & SA, 285 F.3d 764, 777 (9th Cir. 2002) ("Authentication can also be accomplished through judicial admissions such as . . . production of items in response to . . . [a] discovery request.") (quoting 31 Federal Practice & Procedure: Evidence § 7105, at 39); Maljack Prods., Inc. v. GoodTimes Home Video Corp., 81 F.3d 881, 889 n.12 (9th Cir. 1996) (documents bearing a party's letterhead that were produced by the party in discovery were deemed authentic when offered by the party-opponent). Moreover, this letter appears to be signed by defendant Winter, identifies him as the President of defendant FSLA, and carries a header with the name and address of defendant FSLA. See also Fed. R. Evid. 901(b)(4) (noting that the "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances," may support a finding of authenticity). Accordingly, the Court finds that this exhibit has been sufficiently authenticated. The moving defendants' objection is, therefore, OVERRULED.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

satisfied by Winter's responses as he did not follow through with his threat of legal action and the moving defendants did not return plaintiff's deposit.

Accordingly, the Court cannot conclude that that plaintiff suspected, or had reason to suspect, that the moving defendants had made her a false promise until, at the earliest, January 1, 2012. The Court, therefore, DENIES defendants' motion for summary judgment to the extent it contends that plaintiff's promissory fraud claim is time-barred.

### 2. Economic Loss Rule

Defendants also argue that plaintiff's claim is barred by the economic loss rule. "The economic loss rule [states] that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement." JMP Securities LLP v. Altair Nanotechnologies, Inc., 880 F. Supp. 2d 1029, 1042 (2012); see also Robinson Helicopter Co., Inc. v. Dana Corp., 34 Cal. 4th 979, 988 (2004) ("The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise."). The California Supreme Court has explained that the purpose of this rule is to maintain a distinction between tort law and contract law. See Robinson Helicopter, 34 Cal. 4th at 988 ("Quite simply, the economic loss rule "prevent[s] the law of contract and the law of tort from dissolving one into the other.") (citations omitted); see also Giles v. General Motors Acceptance Corp., 494 F.3d 865, 873 (9th Cir. 2007) ("Broadly speaking, the economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and for tort."). Accordingly, "[t]he [economic loss] rule generally bars tort claims based on contract breaches, 'thereby limiting contracting parties to contract damages.' " UMG Recordings, Inc. v. Global Eagle Enm't., Inc., 117 F. Supp. 3d 1092, 1103 (C.D. Cal. 2015) (citing United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp., 660 F. Supp. 2d 1163, 1180 (C.D. Cal. 2009)).

Moreover, courts have found that claims for promissory fraud are particularly susceptible to the economic loss rule. See, e.g., JMP Securities, 880 F. Supp. 2d at 1042 (promissory fraud claim barred by the economic loss rule); UMG Recordings, Inc., 117 F. Supp. 3d at 1105 (same); Oracle USA, Inc. v. XL Global Services, Inc., 2009 WL 2084154, at *7 (N.D. Cal. Jul. 13, 2009) (same); Audigier Brand Mgmt. v. Perez, 2012 WL 5470888, at *5 (C.D. Cal. Nov. 5, 2012) (same).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

Nonetheless, there are several exceptions to the economic loss rule. See Oracle, 2009 WL 208154, at *4 ("Exceptions have been permitted only where: a breach of duty causes a physical injury; the covenant of good faith and fair dealing is breached in an insurance contract; an employee was wrongfully discharged in violation of a fundamental public policy; or a contract was fraudulently induced.") (citing Butler–Rupp v. Lourdeaux, 134 Cal. App. 4th 1220(2005)). And, as relevant here, fraudulent inducement is a well-recognized exception to the economic loss rule. See NuCal Foods, Inc. v. Quality Egg LLC, 918 F. Supp. 2d 1023, 1033 ("In short, the 'economic loss rule is designed to limit liability in commercial activities that negligently or inadvertently go awry, not to reward malefactors who affirmatively misrepresent and put people at risk.' ") (quoting Robinson, 34 Cal. 4th at 991 n.7); Lazar, 12 Cal. 4th at 638 ("An action for promissory fraud may lie where a defendant fraudulently induces the plaintiff to enter into a contract.").

In her supplemental brief, plaintiff asserts that the moving defendants fraudulently induced her to enter into the Second Addendum. In particular, plaintiff claims that the moving defendants fraudulently induced her by promising her that they would deliver her condominium units by December 31, 2011 when, in reality, they had no intention of doing so. Generally speaking, the terms of a contract cannot form the basis of a fraudulent inducement claim for purposes of the economic loss rule. See Foster Poultry Farms v. Alkar-Rapidpak-MP Equipment, Inc., 868 F. Supp. 2d 983, 993 (E.D. Cal. 2012) ("[W]here the alleged misrepresentation [is] also alleged to be a stand-alone contract, the plaintiff's fraud claims [are] barred by the economic loss doctrine."). However, there is also evidence in the record which suggests that the moving defendants may have, at a minimum, overstated the viability of the condominium project. For example, despite promising plaintiff that they would deliver her condominium units by the end of 2011, only two months after making this promise, in October of 2010, the moving defendants filed a complaint against the FDIC in which they acknowledged that they had failed to obtain the required financing to complete the condominium project. Accordingly, the Court is not prepared at this stage to conclude that plaintiff could not ultimately produce evidence at trial to support a claim that the moving defendants fraudulently induced her to enter into the Second Addendum.

The Court, therefore, DENIES the moving defendants' motion for summary judgment as to plaintiff's promissory fraud claim. To the extent plaintiff ultimately fails to adduce evidence at trial that the moving defendants fraudulently induced her to enter into the Second Addendum, the moving defendants may renew their argument based on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

the economic loss rule in the form of a motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50.

### B.   Plaintiff's Fourth Through Seventh Claims

The moving defendants also move for summary judgment on plaintiff's fourth claim (actual fraudulent transfer), fifth claim (constructive fraudulent transfer), sixth claim (constructive fraudulent transfer—insolvency), and seventh claim (violation of California's Unfair Competition Law).  The moving defendants argue that each of these claims is barred by the PSA, which contains an exclusive remedy provision.  Specifically, paragraph 11(a) of the PSA provides that, "[i]f the Closing fails to occur due to [FSLA's] default hereunder, which default is not cured within thirty (30) days, [plaintiff's] sole and exclusive remedy shall be to terminate this Agreement and receive a refund of [her deposit plus interest]."  PSA ¶ 11(a).  The PSA then goes on to state: "[FSLA] shall not be liable for any other remedies, *including any claims for any other damages*, including, without limitations, additional compensatory damages, special damages, consequential damages (including, without limitation, damages for lost profits, delay, changes in market conditions, etc.) or punitive damages, based upon any breach or default under this Agreement *or any other act, error or omission by [FSLA]*."  Id. (emphasis added).  In light of this provision, the moving defendants contend that plaintiff is precluded from pursuing any claims against defendants, other than for a refund of her deposit plus interest, based on either a breach of the agreement or "any other act, error or omission by [FSLA]."

In her opposition, plaintiff does not appear to dispute that her fourth through seventh claims fall within the scope of the PSA's exclusive remedy provision.  Instead, the parties principally dispute whether paragraph 11(a) of the PSA is a valid limitation of liability clause under California law.  Plaintiff argues that paragraph 11(a) purports to exempt defendants from responsibility for their own fraudulent or unlawful conduct and is, therefore, void as against the policy of the state of California.  In particular, plaintiff argues that this provision violates California Civil Code § 1668, which states:

> All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES - GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

The moving defendant's counter that, while section 1668 prohibits contracts which exempt a party from *all* liability, it does not apply where a contract merely *limits* liability. See,e.g., Caza Drilling (California), Inc. v. TEG Oil & Gas U.S.A, Inc., 142 Cal. App. 4th 453 (Cal. Ct. App. 2006) (upholding exculpation clause where "[t]he provisions at issue [did] not exempt [defendant] from all liability, but merely limit[ed] its responsibility with respect to economic damages."); Farnham v. Superior Court, 60 Cal. App. 4th 69, 74 (Cal. Ct. App. 1997) ("Although exemptions from *all* liability for intentional wrongs, gross negligence and violations of the law have been consistently invalidated, we have not found any case addressing a *limitation* on liability for intentional wrongs, gross negligence or violations of the law.") (emphasis in original and internal citations omitted). Here, paragraph 11(a) does not exempt the moving defendants from all liability; rather, it merely limits plaintiff's sole remedy to recovery of her deposit plus interest. Thus, the moving defendants contend the agreement does not violate section 1668. The Court finds plaintiff's argument to be more persuasive.

While it is true that courts generally permit contracts that merely limit a party's liability, courts uniformly hold that such contracts "are ineffective with respect to claims for fraud and misrepresentation." Food Safety Net Servs., 209 Cal. App. 4th at 1126. In Peregrine Pharmaceuticals, Inc. v. Clinical Supplies Management, Inc., 2014 WL 3791567 (C.D. Cal. Jul. 31, 2014), a court in this district applied this concept under circumstances similar to those present in this case. There, the parties had a contract which contained a limitation on damages clause. Id. at *7. As in this case, the parties' agreement did not wholly exempt the defendant from liability, but rather merely limited the plaintiff to a specific set of remedies. Id. Nonetheless, the court held that the parties' agreement was inapplicable in the context of a claim for fraud. Id. at *15 ("None of the cases cited by [defendant] uphold the application of a liability limitation clause to a fraud claim, even where the clause amounts to a limitation on damages . . . as opposed to an outright exemption.").

In the instant case, the moving defendants seek to bar plaintiff from pursuing claims for fraudulent transfer.[10] The Court has found no authority directly addressing the applicability of section 1668 to claims for fraudulent transfer; however, at base these

---

[10] The moving defendants also seek to preclude plaintiff from bringing her seventh claim for violations of the UCL. This claim is based on the same conduct as plaintiff's fraudulent transfer claims. See FAC ¶¶ 141-42. Accordingly, the Court's analysis with respect to plaintiff's fraudulent transfer claims is equally applicable to her UCL claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**     'O'

| Case No. | 2:14-cv-06264-CAS(SSx) | Date | May 3, 2016 |
|---|---|---|---|
| Title | JUNG JAE LEE v. FEDERAL STREET L.A., LLC, ET AL. | | |

claims are grounded in allegations of fraud. <u>See, e.g.</u>, FAC ¶ 114 ("Plaintiff . . . alleges that in or around 2010, Defendants entered into an agreement among themselves for the unlawful and wrongful purpose of, among other things, effecting fraudulent transfers of the Property . . . with the specific intent to hinder, delay, and defraud Plaintiff."). Thus, were paragraph 11(a) to apply in this case, it would insulate the moving defendants from liability for their allegedly fraudulent conduct. This is impermissible under California law. <u>See</u> <u>Civ. Ctr. Drive Apartments, Ltd. Partnership v. Southwestern Bell Video Servs.</u>, 295 F. Supp. 2d 1091, 1106 (N.D. Cal. 2003) ("Under § 1668 of the California Civil Code, contracts which "have for their object . . . to exempt any one from responsibility for his own fraud . . . are against the policy of the law."); <u>see also</u> <u>Blankenheim v. E.F. Hutton & Co.</u>, 217 Cal. App. 3d 1463, 1471 (Cal. Ct. App. 1990) (holding that under § 1668, "a party may not contract away liability for fraudulent or intentional acts").

Accordingly, the Court concludes that, pursuant to section 1668 of the California Civil Code, the exclusive remedy provisions of the PSA do not apply to plaintiff's fourth through seventh claims. The moving defendants' motion for partial summary judgment as to these claims is, therefore, DENIED.

## V. CONCLUSION

In accordance with the foregoing, the Court **DENIES** in its entirety the moving defendants' motion for partial summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |